**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, <br><br>    Petitioner, <br><br>  v. <br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br>    Respondents. | Case No. 26-1132 <br>(and consolidated cases) |

**AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS'
OPPOSITION TO COALITION FOR RENEWABLE NATURAL GAS'S
<u>MOTION FOR SEVERANCE AND ABEYANCE</u>**

Pursuant to Federal Rule of Appellate Procedure 27, Petitioner American Fuel & Petrochemical Manufacturers ("AFPM") respectfully opposes the Coalition for Renewable Natural Gas's ("CRNG's") motion to sever Case No. 26-1143 from the consolidated petitions and hold that case in abeyance, or in the alternative, sever issues related to the 2025 Waiver Determination in the rule under review and hold those issues in abeyance, Doc. No. 2180916 ("Motion").

**INTRODUCTION**

The consolidated cases challenge a final agency action taken by the U.S. Environmental Protection Agency ("EPA") titled "Renewable Fuel Standard (RFS) Program: Standards for 2026 and 2027, Partial Waiver of the 2025 Cellulosic

Biofuel Requirements," 91 Fed. Reg. 16388 (April 1, 2026) ("Set 2 Rule"). This rule was promulgated to implement provisions of the Renewable Fuel Standard ("RFS"), 42 U.S.C. §7545(*o*). The rule established applicable volume and percentage standards for renewable fuel in the years 2026-2027, partially waived the cellulosic biofuel requirement for 2025, and promulgated "several regulatory changes to the RFS program, including removing renewable electricity as a qualifying renewable fuel under the RFS program (eRINs) and making minor revisions to the biogas provisions of the RFS program." 91 Fed. Reg. at 16388.

CRNG seeks to sever either Case No. 26-1143 (or issues "related to the 2025 Waiver Determination") from the consolidated cases. Motion at 14-15. The Court should deny this motion on three grounds. First, severance will not serve judicial economy or efficiency but will instead entangle this Court in additional litigation extending years into the future regarding what RFS standards should have applied in *2025*. Second, because EPA's analysis for the 2026 and 2027 standards is explicitly based on analysis incorporating the revised cellulosic biofuel volumes for 2025, issues concerning the level of cellulosic biofuel obligations in 2025 cannot be disentangled from requirements that apply in 2026 and 2027. Third, obligated parties represented by AFPM would be harmed by any delay in a final determination of applicable cellulosic biofuel requirements for 2025, as lingering uncertainty imposes additional costs on AFPM members.

## ARGUMENT

When this Court exercises its discretion to manage its docket, including severing and holding certain matters in abeyance, "the interest in judicial economy must be weighed against any potential prejudice to the parties." *Utah by and through Cox v. EPA*, No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025) (citing *Landis v. N. Amer. Co.*, 299 U.S. 248, 258-59 (1936)). Indeed, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis,* 299 U.S. at 255. CRNG has failed to make such a "clear case." The Court should thus decline to grant the Motion for the following reasons:

1.      CRNG argues that judicial economy supports severing its petition. This argument rests on the assumption that litigation involving the 2024 cellulosic biofuel standard "is likely dispositive of issues RNG COALITION plans to raise here." Motion at 2.

Notably, though, the Motion does not claim that resolution of *Coalition for Renewable Natural Gas v. EPA*, Case No. 25-1183 ("*CRNG v. EPA*"), *will* be dispositive—only that it "is likely" to be. On this speculative basis alone, CRNG asks the Court to deviate from the normal practice of consolidating "all petitions for

review of agency orders entered in the same administrative proceeding." Motion at 10 (citing D.C. Cir. Handbook at 24).

There is no reason why this Court should deviate from long-established practice given that: (1) CRNG's issues concerning EPA's use of its cellulosic waiver authority were fully addressed in the course of the Set 2 rulemaking, and requirements for cellulosic biofuel are "nested" within other renewable fuel categories; (2) it is pure conjecture to forecast when this Court will rule in pending litigation, how it will do so, and how it may impact the consideration of the consolidated cases; and (3) CRNG offers no assurances that it will dismiss its petition for review in No. 26-1143 if this Court denies its petition for review in No. 25-1183.

CRNG has provided no reason to question EPA's decision to address related RFS issues in a single rulemaking. EPA issued a proposed rule in June 2025 and a supplemental proposal in September 2025, holding a public hearing and providing an opportunity for written comments on each. 91 Fed. Reg. at 16389. The administrative docket contains all information upon which EPA relied, including a Response to Comments document (EPA-HQ-OA-2024-0505-0920) and a Regulatory Impact Analysis (EPA-HQ-OAR-2024-0505-0919). EPA's actions in the Set 2 Rule are thus ripe for review. Delaying consideration of issues concerning one category of renewable fuel based on the possibility that this Court may rule one

way or the other in a different case cannot be justified—particularly when such delay harms the directly regulated party and undermines the very purpose of EPA's rulemaking to establish standards governing implementation of the full RFS program through 2027.

CRNG's Non-Binding Statement of Issues also belies any argument that CRNG is actually raising the same issues in both Case No. 25-1183 and with regard to its challenge to the Set 2 Rule. As for the Set 2 Rule, CRNG has stated it intends to argue "[w]hether EPA's failure to include a small refinery exemption reallocation volume for cellulosic biofuel was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." Doc. #2181990 at 2. Case No. 25-1183 cannot resolve this issue, as it is unique to the Set 2 Rule.

CRNG also filed expansive comments on the challenged rule spanning 239 pages. EPA-HQ-OAR-2024-0505-0645, Attachs. 1-5. Yet nothing in the Motion commits or binds CRNG to the multiple arguments regarding cellulosic biofuel it sought to preserve for litigation. CRNG states only that "[t]he Court's decision in Case No. 25-1183 is likely to be dispositive of *one or more* of the *issues* RNG COALITION *intends to raise* with respect to its challenge to the 2025 Waiver Determination." Motion at 12 (emphasis added). Beyond undermining any claim of judicial economy, this amounts to a request that CRNG be allowed to pick and choose which issues it wants to brief and when.

2.     Provisions contained in the Set 2 Rule are interrelated and all issues concerning this rule should be considered together by the Court.

The level of the cellulosic biofuel standards for 2025, 2026 and 2027 has been determined in the regulation under review in the consolidated cases and the cellulosic biofuel standard for those years is "nested"[1] within the standards EPA has promulgated for other renewable fuels. Therefore, the issues concerning these standards are directly linked, and should be viewed holistically and considered by the Court in one proceeding.

The cellulosic biofuel standard for 2025 (as partially waived) and the other standards promulgated in the Set 2 rule for 2026 and 2027 are inextricably connected. In the Set 2 Rule, EPA reduced the applicable volume for cellulosic biofuel in 2025 to 1.21 billion Renewable Identification Numbers ("RINs") from 1.38 billion RINs. 91 Fed. Reg. at 16392. EPA then used this lowered amount to analyze what cellulosic biofuel standards to set for 2026 and 2027. Specifically, EPA "analyzed two factors: the amount of [renewable natural gas] that could be produced and the amount of renewable [compressed natural gas]/[liquefied natural gas] that

---

[1] A "nested" category of renewable fuel is one whose volume requirement is sub-sumed within the volume requirements of the broader category or categories in which it is nested. *See Ams. for Clean Energy v. EPA*, 864 F.3d 691, 697-98 (D.C. Cir. 2017) ("The renewable fuel types are 'nested,' meaning that cellulosic biofuel and biomass-based diesel are kinds of advanced biofuel, and advanced biofuel in turn is a kind of renewable fuel that may be credited toward the total renewable fuel obligation.").

could be consumed as RFS-qualifying transportation fuel." *Id.* at 16400. EPA examined "cellulosic RIN generation for RNG over the two most recent full calendar years … deriv[ing] a 24 percent year-over-year growth rate. [EPA] applied this rate to the 2025 cellulosic RIN generation baseline for RNG to project 2026 RIN generation and then used the 2026 projection to estimate 2027 RIN generation." *Id.* at 16401. Using this analysis, EPA then set percentage standards for cellulosic biofuel for 2026 and 2027. *Id.* at 16487; 40 C.F.R. §80.1405(a), Tbl. 1. Thus, cellulosic biofuel standards for 2026 and 2027 are derived from analysis of consumption in prior years, including the most recent prior year of 2025.

One feature of the RFS is its "nested" compliance structure: cellulosic RINs may be used to satisfy cellulosic biofuel, advanced biofuel, and total renewable fuel obligations.[2] Therefore, given the ability of an obligated party to carry forward a renewable fuel obligation deficit from 2025 to 2026 (40 C.F.R. §80.1427(b)),

---

[2] 40 C.F.R. §80.1427(a)(2) allows for different types of RINs to be valid for compliance with renewable fuels other than the renewable fuel that generated the RIN. RINs generated by cellulosic biofuel (denoted as having D codes of 3 and 7) may be used for compliance with all four renewable fuel categories. *Id.* §80.1427(a)(2)(i)-(iv). EPA noted the "nested" nature of RFS standards at several places within the Set 2 Rule including with reference to reallocation of small refinery exemption volumes for cellulosic biofuel, one of the issues identified by CRNG. *See, e.g.*, 91 Fed. Reg. at 16391, 16395, 16399. Specifically, EPA "noted that, given the nested nature of the standards, the total renewable fuel and advanced biofuel [small refinery exemption] reallocation volumes would include some amount of RINs associated with the 2023-2025 exempted cellulosic biofuel [renewable fuel obligations] unless we made corresponding reductions in the total renewable fuel and advanced biofuel [small refinery exemption] volumes." *Id*. at 16439.

alteration of the final 2025 cellulosic biofuel standard could also impact how obligated parties comply with 2026 standards for other renewable fuels.[3]

3.      Contrary to CRNG's unsupported assertions (at 13) that "parties would suffer no hardship if RNG COALITION's petition is severed and held in abeyance[,]" any delay in resolving the level of the 2025 cellulosic biofuel standard harms AFPM's obligated-party members.

CRNG presumably believes that because AFPM members must demonstrate compliance with the partially waived 2025 cellulosic biofuel standard by September 1, 2026, no harm will be incurred pending resolution of No. 25-1183. Motion at 13. This ignores the fact that continuing uncertainty regarding RFS obligations is, in itself, harmful to obligated parties. AFPM members cannot reasonably plan for the full range of potential outcomes if resolution of 2025 cellulosic biofuel requirements remains outstanding, nor are they able to reasonably utilize existing compliance flexibilities that may allow for less costly compliance, such as the ability to "carry over" RINs from one compliance year to the next,[4] if severance is granted. While

---

[3] We would note that such impact would be even greater if the 2025 cellulosic bio-fuel waiver was invalidated as CRNG seeks. This is because cellulosic waiver credits would no longer be available for use for compliance with 2025 cellulosic standards, leaving an inadequate supply of cellulosic RINs and forcing some obligated parties to accrue deficits. The partial waiver of cellulosic biofuel standards in 2025 makes cellulosic waiver credits available for compliance for that year. 91 Fed. Reg. 16392

[4] 42 U.S.C. §7545(o)(5)(D); 40 C.F.R. §80.1427(b).

AFPM members cannot control the timing of any judicial action affecting compliance with the 2025 cellulosic biofuel standard, cognizable business interests lie in knowing what RFS requirements apply at the earliest possible date so that obligated parties can plan for and acquire the valid RINs needed for compliance. Additional delay compounds this harm, particularly given that 2025 cellulosic biofuel standards were required to be promulgated by October 31, 2023, and 2024 cellulosic biofuel standards by October 31, 2022. 42 U.S.C. §7545(*o*)(2)(B)(ii). Severing No. 26-1143 or "issues related to the 2025 Waiver Determination" from the consolidated cases would inevitably produce further delay beyond the existing departure from the statutory 14-month lead-time requirement and further compromise the cellulosic biofuel RIN acquisition strategies that obligated parties have in place.

Uncertainty is also created simply by the contingent nature of future litigation on the 2025 cellulosic waiver. CRNG proposes that this Court wait until legal issues regarding the 2024 cellulosic waiver reach "resolution" before allowing a new (and potentially different) challenge to be lodged against the 2025 cellulosic biofuel waiver. Motion at 14-15. Alternatively, it requests that the Court sever "issues related to the 2025 Waiver Determination" without defining what those issues are. AFPM members should not be further disadvantaged by having a cloud of potential

9

litigation, to be determined at some future date, hanging over their RFS compliance efforts.

AFPM members bear no responsibility for EPA's chronically late RFS standards. They should not be further disadvantaged by not knowing the final level of 2025 cellulosic biofuel requirements until an abeyance in No. 25-1183 is lifted, briefing occurs, this Court rules, and potential appeals are exhausted. Just as CRNG cannot know whether its legal arguments will prevail, AFPM members cannot know that such arguments will fail until this Court rules.[5] On balance, resolving the regulatory mandates applicable to AFPM members at the earliest possible time best serves the interests of all parties. These interests outweigh any purported disadvantage to CRNG in having to "expend[] resources unnecessarily to preserve its right to challenge the 2025 Waiver Determination." Motion at 14. If the issues are as similar as CRNG claims, briefing should be straightforward. If a ruling in No. 25-1183 alters the need for briefing on certain issues, the parties can subsequently notify the Court. In sum, CRNG has provided no reason for the Court to indulge its gamble that it might secure a favorable outcome in litigation challenging the 2024 waiver.

---

[5] CRNG also complains that EPA or AFPM might seek to "limit the ability of RNG COALITION to fully make its arguments" presumably by asserting that CRNG's words be limited. Motion at 14. But this is a decision for the Court within the context of the consolidated cases.

# CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Dated: July 9, 2026                      Respectfully submitted,


/s/ *Robert J. Meyers*
Robert J. Meyers
Elizabeth B. Dawson
CROWELL & MORING LLP
600 Fifth Street NW
Washington, D.C.  20001
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
rmeyers@crowell.com

*Attorneys for American Fuel &
Petrochemical Manufacturers*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,342 words, excluding those parts exempted by Rule 32(f).

This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 Times New Roman 14-point font.

/s/ *Robert J. Meyers*
Robert J. Meyers

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2026, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Robert J. Meyers*
Robert J. Meyers